# MEMORANDA

OF

# CASES NOT REPORTED IN FULL.

THE PEOPLE OF THE STATE OF NEW YORK *v.* THE
KNICKERBOCKER LIFE INSURANCE COMPANY
(IN RE HENDERSON).

*Revaluation of a claim filed with the receiver of an insolvent life insurance com-*
*pany — when it will not be granted on account of the uninsurable condition of the*
*assured at the time of the valuation, which was followed by his death.*

APPEAL from an order of the Special Term, denying a motion for
a revaluation of policies of insurance upon the life of Elisha W.
Henderson.

The Knickerbocker Life Insurance Company was dissolved and
a receiver thereof appointed by a judgment entered on the 29th of
December, 1882. An order was made by the court requiring the
filing of claims within the prescribed period, which expired on the
15th of August, 1883. Before the expiration of that time, policies
on the life of Elisha W. Henderson were filed as claims with the
receiver. No claim or proof was filed with the receiver showing
that the life of the insured had ceased to be insurable, or that any
state of facts existed which took the case out of the general rules
of valuations. The valuation of the policies as running claims was,
therefore, made in accordance with the rule and system prescribed
by the American Experience tables, and on or about the 7th day of
August, 1884, the actuary made and filed with the receiver his
report, which was, on or about the 1st day of September, 1884,
confirmed by this court, and a dividend of twenty per cent declared
on the reserved value of all valid claims filed with the receiver.
The party insured by these policies died on the 27th of February,
1885. After his decease, proofs of death were filed in the office of
the receiver on or about the 1st day of July, 1885, showing that
the direct and immediate cause of the death of the life insured was

a carbuncle from which he had been suffering about two weeks, and that the remote cause of death was diabates. The affidavits now presented show that the decedent had been afflicted with diabates during the last two years of his life, and was, on the the 1st of September, 1884, at or about which time the valuation was made, in feeble health, and was not what would be considered an insurable risk at that time.

The court at General Term said : " Upon this state of facts it is now moved that a revaluation of the policies be made treating them substantially as death claims. The court below denied the motion holding in substance that the rule laid down in the Croissant case (at Special Term, BARRETT, J., reported Daily Register, April 18, 1885, vol. 27, p. 768, affirmed *People* v. *Knickerbocker Life Ins. Co.*, 36 Hnn, 645), should not be extended, and that the facts of this case did not show that the decedent was moribund or *in extremis* when the valuation was made.

" We think the conclusion of the court at Special Term, was right and should not be disturbed. No claim was made at the time of filing the policies which would put them upon any different footing than those of other running policies, nor was any knowledge brought home to the receiver or to the actuary that any state of facts existed which required a different rule to be applied in the valuation of those policies. The valuation was complete and confirmed by the court some months before the decease of the assured. He subsequently died of a carbuncle which might have been superinduced by the previous condition of his health caused by the alleged lingering and fatal disease. But to adopt the course claimed on the part of the appellant would introduce so much uncertainty in proceedings of the receiver in cases of this kind as to render them extremely difficult and embarrassing. The party very clearly was not moribund at the time of presenting his claim nor in danger of immediate death, though his life might have become a non-insurable risk. The subsequent cause of death may have been superinduced by the existing disease, and it was the duty of the assured, if he were in fact in that condition, to have presented his claim upon the basis of his non-insurable condition. If we were to order a revaluation upon the facts presented in this case, we should open the door to incessant litigation in the case of every person

nsured in the company who subsequently and before the final closing of the receiver's account shall have died.

"We are of opinion that the court below properly disposed of the motion, and that the order should be affirmed, but under the circumstances, without costs."

*Horace Russell*, for the appellant.

*J. M. Gifford*, for the respondent.

Opinion by Davis, P. J.; Brady and Daniels, JJ., concurred.

Order affirmed, without costs.

---

JOHN LYNCH, Appellant, v. OSCAR PFEIFFER, Respondent.

OSCAR PFEIFFER, Respondent, v. JOHN LYNCH and Another, Appellants.

*Religious corporation — right of, when unable to pay its current expenses, to sell its property to another religious corporation, subject to the payment of all debts and liens.*

Appeals from judgments of the Special Term in both of the above entitled actions, which were cross actions to compel the specific performance of a contract for the sale of certain lands.

The principal question on these appeals arose upon the validity of the sale of the premises agreed to be conveyed, by the contract described in the complaint, by the Manhattanville Presbyterian Society to the trustees of the Presbytery of New York, a body corporate under the laws of the State of New York. That sale was made under and pursuant to an order of the Special Term of the Supreme Court of this district, entered on the 12th day of May, 1875, upon the petition of the Manhattanville Presbyterian Society, presented in that month. The petition set forth that the petitioners were a religious corporation incorporated under an act entitled "An act for the incorporation of religious societies," passed April 5, 1813, and the acts amendatory thereof; that the corporation was seized in fee of the premises; that the premises were mortgaged under and pursuant to an order of the court to one William Van Allen, to secure the sum of $3,250 and interest, by a mortgage bearing date April